01
02
03
04
05
06
07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )        Case No. CR06-38-RSM-JPD
                                    )
        v.                          )
                                    )
HARMINDER SINGH,                    )        DETENTION ORDER
                                    )
            Defendant.              )
_____)

Offenses charged:

        Count 1:  Conspiracy to Smuggle and Transport Illegal Aliens in violation of 8 U.S.C.

§§ 1324.

        Count 10:  Bringing Illegal Alien for Financial Gain in violation of 8 U.S.C.

§ 1324(a)(2)(B)(ii) and 18 U.S.C. § 2.

        Count 11:  Transporting Illegal Alien in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii),

1324(a)(1)(A)(v)(II), and 1324 (a)(1)(B)(i).

Date of Detention Hearing:  June 1, 2006.

        The Court, having conducted a detention hearing pursuant to 18 U.S.C. § 3142(f), and

based upon the factual findings and statement of reasons for detention hereafter set forth,

finds the following:

            FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION

        The question of whether the defendant should be detained has been considered

previously.  At that time, the defendant was charged with alien smuggling in the *United*

01  *States of America v. Singh,* CR 06-91 TSZ.  The Honorable Mary Alice Theiler ordered on

02  April 17, 2006, that the defendant be detained, finding him to be a risk of flight.  Upon

03  further review and a subsequent hearing, Judge Theiler reaffirmed her decision on May 11,

04  2006, to detain the defendant as a risk of flight.

05          On May 16, 2006, the government dismissed the indictment that was the subject of

06  Judge Theiler's detention orders.  However, on May 11, 2006, the defendant was charged by

07  means of a superceding indictment in this case, *United States of America v. Dehagi, et al.*,

08  CR 06-38 RSM, originally filed on February 1, 2006, and subsequently in a second

09  superceding indictment returned on May 24, 2006.  The defendant made his initial appearance

10  in this case on May 25, 2006.

11          At the defendant's initial appearance on the pending charges, the Court determined

12  that the defendant was entitled to a *de novo* detention hearing.  The hearing on the

13  government's motion to detain the defendant took place on June 1, 2006.   During the

14  argument on detention, the government and the defendant made reference to proffers and

15  testimony made during the second detention hearing in CR 06-91.  As a result, the

16  undersigned Magistrate Judge ordered that the transcript of that hearing be posted and made

17  part of this hearing.

18          The defendant is charged in Count 1 with a conspiracy to smuggle and transport

19  aliens, namely Indians and Pakistanis, from Canada into the United States.  The defendant

20  was born in Hamjinpur, India, and came to the United States on a visitor's visa in 1997.

21  Shortly after his arrival, he filed an application for political asylum, which was granted,

22  because he established that, as a Sikh,  he had a well-grounded fear of future persecution or

23  had faced past persecution based on his religious beliefs.  The defendant has resided in the

24  Seattle area for a period of approximately two years.  His wife and child remained in India

25  until 2005, when they were able to join him.  He has been employed as a cab driver.

26          The Bail Reform Act of 1984, 18 U.S.C. § 3145, requires the release of a person

DETENTION ORDER                                                                 15.13
18 U.S.C. § 3142(i)                                                         Rev. 1/91
PAGE 2

01 facing trial under the least restrictive conditions that will reasonably assure the appearance of

02 the person as required and the safety of the community.  On a motion for pretrial detention,

03 the government bears the burden of proving by a preponderance of the evidence that the

04 defendant poses a risk of flight, and by clear and convincing evidence that the defendant

05 poses a danger to the community.  *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir.

06 1991).  In this case, the government has not carried its burden of proving that the defendant

07 poses a danger to the community.  The issue before the Court, therefore, is whether the

08 government has proven by a preponderance of the evidence that the defendant poses a risk of

09 flight.  It is the judgment of the Court that the government has done so, and the defendant will

10 be detained pending trial in this matter.

11        As discussed above, the defendant is charged with alien smuggling and with a

12 conspiracy with others to smuggle Indians and Pakistanis from Canada into the United States.

13 The government claims that approximately fifty (50) illegal aliens have been so smuggled,

14 which, if true, would indicate a sophisticated trail for bringing aliens into Canada and then

15 into the United States.

16        If the defendant is convicted of the charges in this case, he could face a mandatory

17 minimum sentence of three (3) years in prison.  Of greater significance is that, based on the

18 testimony of Mr. Fehlings, Deputy Chief Counsel for Immigration and Customs Enforcement,

19 if convicted, the defendant would likely be deported following his incarceration, and he

20 would be unable to be able to renew his asylum status.  If this happened, in all probability,  he

21 would be deported to India.

22        The defendant received a grant of political asylum in this country in 1998 as a result

23 of religious persecution that he either received or was likely to receive in India.  He does,

24 however, still have family members in India.   The asylum grant impacts the risk of flight

25 analysis in two ways.  Were it not for the asylum grant and fear of persecution in India, the

26 defendant would pose a risk of flight to return to India where he still has family and where his

01 wife and child resided until 2005, in order to avoid prosecution for the pending charges.

02 Because the asylum grant is so old, however, and because the defendant still has family in

03 India, it is possible that the fear of persecution in India may no longer exist, which would

04 otherwise serve as a deterrent to the defendant fleeing to India to avoid prosecution.  On the

05 other hand, if the fear of persecution in India still exists, then the defendant knows that if he

06 is convicted, he will likely be returned to India following any imprisonment.  In this case,

07 then it is probable that the defendant would use the channels allegedly developed in Canada

08 as part of the alleged smuggling conspiracy to flee this jurisdiction, in order to avoid not just

09 the possibility of incarceration for the pending charges, but the almost certain deportation to

10 India following incarceration.

11    The defendant argues that the issue of alienage cannot be used to determine

12 conclusively that a defendant poses a risk of flight, citing *United States v. Motamedi*, 767

13 F.2d 1403, 1408 (9th Cir. 1985).  However, as the court in *Motamedi* noted, while alienage is

14 not a conclusive factor, it is one factor that the court can take into account when considering

15 the risk of flight.  In this case, not only is alienage a factor, but the broad-ranging

16 international conspiracy that is alleged supports the finding that the defendant poses a risk of

17 flight.  In this regard, at the initial hearing before Judge Theiler, Rajpal Padda, a person

18 unrelated to the defendant, offered to post real property as security to secure the release of the

19 defendant.  At the hearing before the undersigned, the Assistant United States Attorney

20 proffered that this person has had contact with others involved in the alleged conspiracy,

21 including the head of the alleged smuggling operations.

22    Because of the near certainty that the defendant would be deported if he is convicted,

23 he has incentive to flee the country to either India, where he has family and where his wife

24 and child resided until 2005, or to Canada, to avoid being deported to India if he still fears

25 persecution there.  There are no conditions that would reasonably assure the presence of the

26 defendant as required if released.

01    IT IS THEREFORE ORDERED:

02    (1)    Defendant shall be detained pending trial and committed to the custody

03           of the Attorney General for confinement in a correction facility

04           separate, to the extent practicable, from persons awaiting or serving

05           sentences or being held in custody pending appeal;

06    (2)    Defendant shall be afforded reasonable opportunity for private

07           consultation with counsel;

08    (3)    On order of a court of the United States or on request of an attorney for

09           the government, the person in charge of the corrections facility in

10           which defendant is confined shall deliver the defendant to a United

11           States Marshal for the purpose of an appearance in connection with a

12           court proceeding; and

13    (4)    The Clerk shall direct copies of this Order to counsel for the United

14           States, to counsel for the defendant, to the United States Marshal, and

15           to the United States Pretrial Services Officer.

16    DATED this 2nd day of June, 2006.

17                                          _James P. Donohue_

18                                          JAMES P. DONOHUE
                                            United States Magistrate Judge

19

20

21

22

23

24

25

26

DETENTION ORDER                                                          15.13
18 U.S.C. § 3142(i)                                                 Rev. 1/91
PAGE 5